656 So.2d 1070 (1995)
STATE of Louisiana
v.
Billy BROWN.
No. 95-KA-124.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*1071 John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., Gretna, for appellee.
Bruce G. Whittaker, Gretna, for appellant.
Before GAUDIN, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This criminal matter comes before us on direct appeal. The defendant, Billy Brown, appeals his conviction of four counts of intimidating a witness, the finding that he is a fourth-felony multiple offender, and his resulting sentence of forty years at hard labor. We affirm the convictions, but vacate the sentence and remand for resentencing.

FACTS
The victim, Nancy Stein, met Billy Brown in June of 1992 while they were living in the same apartment building. They became involved in a relationship, which Stein ended in September 1992. Brown continued to pursue Stein, however. Ultimately Brown was arrested on December 25, 1992 for an alleged extortion of Stein.
While Brown was incarcerated on the extortion charge, he sent numerous letters to Stein. Three of those letters are the basis for the charges in this case. Two of the letters, dated February 10, 1993 and October 31, 1993, were sent to Stein only; a third letter, dated November 14, 1993, was directed not only to Stein, but also to her daughter, *1072 Rhonda Barrilleaux. Both Stein and Barrilleaux were witnesses in the extortion case against the defendant.[1] The letters, which were introduced at trial, contained the following pertinent statements:
1. [Letter of Feb. 10, 1993, to Stein]
I have great news to tell you, if you are still caring about me at all. It has to do with my charges. * * * Since they will not hold Court on me until around April or May. That would cause me to lose my Social Security.
* * * * * *
So if the charge of extortion is droped [sic]. Then the Social Security has to start over....
* * * * * *
I swear to Jesus I forgive you for everything, regardless if you drop the charge or not! ...
* * * * * *
Drop the charge against me, and I will forget everything and not bother you ever again.... If I stay in jail Nancye [sic][2] and lose everything because of your lie. Then Nancye you will have to be made to pay for what you have done to me! ... I don't care if you take this letter and show to the Govenonor [sic]! I'll make you pay for it! So help me God! ... Now Nancye no matter what the fuck you do they can not keep me in jail for ever. They have to let me out one day! The day they let me out Nancye you had better pray you never see my face again! Not for a second. I'll promise you Nancye that will be the last face you ever see! So help me God! I don't care if you see me in the police station, that is your last. I know Nancye you think you are slick. Let me ask you. Why did you ask. How did you find me? That is because I have 17 [word illegible] years in prison, learning how to do shit you could never even dream of, let alone know about. I can find you Nancye in any country in the world.... I will show you what a fool I am. I will tell you this and you had better believe it, because your hole [sic] family's life depends on it. If you cause me to lose anything, I said "anything" because of having me in jail on a lie, I will promise you Ms. Stein that I will take care of you in a way that they will not find enough of you to bury! The law can not charge me, if they can not produce a body Nancye! If you think for one moment that I am playing a game with you. You are a fool! I'll not fuck up and write you anymore where you can run to a pig with it!. If you do not answer this letter Nancye and tell me what you want. So help me God I'm going to take care of you. I don't care if it's in the Court room when you come to Court. I am going to take you out! ...
* * * * * *
What shall it be, life or death? You tell me what you want and live! You don't tell me what you want and die!
Witch [sic] do you prefer?
Your actions tell me you are tired of living! If that's the case Nancye. I can handle if for you! Soon!

* * * * * *
2. [Letter of October 31, 1993, to Stein]
I write this letter, so that you will understand how foolish you have been with this matter of me being in jail.
You send me to jail!
Anyone can do that, exspecially [sic] when they lie!
* * * * * *
Now I'll tell you want you are dealing with. A Career Criminal! Law says I'm a Career Criminal. That means Nancye, that I have the mind to proceed with matters such as this one. Believe me Nancye, Law knows best!
* * * * * * *1073 As I am a Carreer [sic] Criminal Nancye, I know my rights, I'm entitled to know everything the State knows and will try to use as evidence against me at trial. I have all of that. Including your whereabouts!
Now, Nancye, if this is what you want, then damn it, that is what you will get! What I want, does not seem to matter to you! but what I want is this over! You can end it by calling the Judge. That's your choice, not mine.... * * * I'll not write and threaten you Nancye you are a rat. There is only one good rat to a Criminal, and that's a dead rat!
* * * * * *
Do you want me to come to your house?
Do you really think you can hide from me, a Carreer [sic] Criminal?
Do you want strange things to happen to you after I'm out?
Do you want to live your life watching for me?

* * * * * *
I'm finished playing games Nancye.
If you are still playing games, it's time to stop. If it does not stop! Then I have to take that to mean, you are trying to put me in prison! If that is what it is, then I have to have some of my Criminal friends show you what a Criminal is! ... Any way it goes, I'll read about you in the paper! If you think I'm playing games with you Nancye, call my pluff [sic]! look how easy it was to get in your apartment for me! Do you think it will be hard for me to have this taken care of!

* * * * * *
I'll give you two weeks to let me know something! If you don't. I'll let you know something quick!
Wait and see.
3. [Letter of November 14, 1993, to Barrilleaux and Stein]
As I know either of you don't like getting mail from me. You do not reply to it. Witch [sic] is your right. There is a reason for it. As I shall tell you now.... I could care less if either of you reply! The purpose is to harrass [sic] you both witch [sic] I will do until the day I die.
Your Mother, if you elect to call her such, fucked over me and you damm [sic] well know it!
* * * * * *
As far as I'm concerned both of you should be hit by a car tonight! Why Jesus was killed for something like either of you is behond [sic] me! Do the world a favor drop dead! Quick!
I don't like writting [sic] a letter like this to anyone, however I don't like being in jail 10 months either. * * *
As I know I'm just before getting out of jail. I've done the time only because your Mother lied!
* * * * * *
What I do know. Is I am a Career Criminal! I will not let your mother get away with what she knows she has done to me. Before I allow that I will be glad to spend my life in Angola!

* * * * * *
I have the mind of a Career Criminal. Someone who has done time with all sorts of people! Murderers, Rapes [sic], etc and etc. I also have friends that owe me from every prison in La. Some that are getting out soon. Some that will never get out! Don't make me have to spell it out! I'll just say, it is in the best interest that your family try to undo the thing that has been done to me. or Ms. Barrilleaux in other words try! They could call the Judge! or write him! All I'm asking that it be shown that it was tried to be resolved by your family, instead of just ... locking me up and forgetting about it! If this is done, it at least shows me that they tried to undo the mistake they made by locking me up on a lie! If it is not done. Then it only tells me they care less what happens to a person they lie on and put in jail.

* * * * * *
I'm tired of being in jail. I'm tired of being without my freedom. I'm tired of not having my property.... I'm tired of all this your Mother has put upon me because of lies!

*1074 All I ask, is that your Mother help end it! or you, or whoever is involved!
If it is not done. I know I'll be out soon! This is because I've studied Law 17 yrs. Since your family does not want to believe this, I'm sorry for it.
This Parish is not big enough for your Mother and I both. When is she leaving. It had better be soon!

* * * * * *
Because of the letters Billy Brown was charged by bill of information filed on February 23, 1994 with five counts of violation of La.R.S. 14:129.1, intimidating a witness. The defendant entered a plea of not guilty to all counts. On April 12, 1994, the State dismissed Count 4 of the bill of information; that same day, the trial court conducted a preliminary examination and found probable cause to hold the defendant for trial on the remaining four counts. Prior to the commencement of trial on April 26, 1994, the State amended the bill to charge Count 5 as Count 4. (Count 1 charged Brown for the October 31, 1993 letter to Stein; Counts 2 and 3 charged him for the November 14, 1993 letter directed to both victims; and Count 4 of the information as amended charged him for the February 10, 1993 letter to Stein.)
Both Stein and Barrilleaux testified at trial. Stein stated that after reading the letters, she was "deathly afraid" and didn't want to come to court. Barrilleaux stated that after reading the letter she was "very afraid" for herself and her family and that she also was afraid to come to court. At the conclusion of trial, the jury returned with a verdict of guilty as charged on all four counts.
Subsequently the State filed a multiple offender bill of information pursuant to La. R.S. 15:529.1, seeking enhanced sentencing of the defendant as a fourth-felony offender. After the trial court denied the defendant's pro se motion for new trial, the defendant entered a plea of not guilty to the multiple bill. On June 13, 1994, the trial court denied the defendant's pro se motions for new trial, in arrest of judgment, and to recuse the judge. That same day, the trial court sentenced the defendant to five years at hard labor on each count, with credit for time served, the sentences to be served consecutively.
On October 14, 1994, the State filed an amended multiple bill of information.[3] At the conclusion of the multiple bill proceeding on November 17, 1994, the trial court found the defendant to be a fourth felony offender. The court then set aside the previous sentence and resentenced the defendant to forty years' imprisonment at hard labor, with credit for time served. Thereafter, the defendant filed a motion to reconsider sentence, which was denied, and this appeal followed.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends the trial court erred in admitting into evidence references to other alleged criminal activity which was not res gestae to the charged offense and was not otherwise properly admissible. Specifically, he contests the trial court's allowing into evidence references he made to his criminal record in the letters to the victims. He argues that the references were inadmissible under La.Code Evid. art. 404(B)(1), in that they neither tended to establish motive, opportunity, intent, etc., nor constituted an integral part of the crime of intimidation.
At a pretrial hearing, the defendant moved to exclude his references in the letters to his "17 years in prison" and his status as "a career criminal," and his statement that "there's only one good rat to a criminal, that's a dead rat." However, the trial court denied the motion, finding that the statements were being offered to prove the essential elements of the crime of intimidating a witness.
Generally, evidence of other crimes is inadmissible in the guilt phase of a trial unless the probative value of the evidence outweighs its prejudicial effect and other safeguards are met. "This evidence is generally inadmissible because, in the determination *1075 of guilt or innocence, the admission of evidence of other crimes which the defendant has committed creates the risk the defendant will be convicted of the present offense simply because he is a `bad person.'" State v. Bourque, 622 So.2d 198, 233 (La.1993). An exception to the general rule occurs where the State offers evidence of other crimes for purposes other than to show the character of the defendant. La.Code Evid. art. 404(B)(1) provides such an exception:
Except as provided in Article 412 [not relevant here], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is subject of the present proceeding.
"Evidence which constitutes an integral part of the crime, formerly known as res gestae, is admissible without prior notice to the defense." State v. Bourque, supra, at 233.
Furthermore, La.Code Evid. art. 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The defendant was being tried on four counts of intimidating a witness. La.R.S. 14:129.1 defines the offense as follows:
No person shall intentionally:
(a) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding * * *.
In the instant case the references were highly probative of the elements of "intimidate ... by threat of force" by showing that the defendant had the wherewithal to harm Ms. Stein and her family, as opposed to just making "idle threats". Furthermore, the references were contained in letters to the victims which were introduced at trial and, as such, constituted evidence of prime significance regarding the proof of the offenses. Therefore, the references were more probative than prejudicial and were properly admitted as evidence of conduct that constituted an integral part of the offenses of intimidating witnesses. Accordingly, we find this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant next contends the trial court imposed an excessive sentence in sentencing him as a multiple offender. The trial court sentenced him to forty years at hard labor as a fourth felony offender, stating that the defendant posed an unusual risk of harm to the public. In his timely motion to reconsider sentence the defendant contended, "Forty years at hard labor for intimidation of a state witness even under R.S. 15:529.1 is an excessive sentence under the circumstances of this particular case." However, the trial court denied the motion.
In order to raise an objection to the sentence on appeal, the defendant must make a motion to reconsider sentence which sets forth "a specific ground" upon which the motion is based. La.Code Crim.P. art. 881.1. Failure to include a specific ground in a motion to reconsider sentence precludes the defendant from urging that ground on appeal or review of the sentence. Id. However, to preserve a claim of constitutional excessiveness, the defendant need only allege that the sentence is excessive. State v. Mims, 619 So.2d 1059 (La.1993). The right to appellate review of a sentence is not lost even if defendant fails to state any specific ground for excessiveness or to present any argument or evidence not previously considered by the trial court; rather, the defendant is relegated to having the appellate court consider the bare claim of excessiveness. Id. at 1059-1060.
In his motion to reconsider the sentence, the defendant alleged that his sentence was excessive "under the circumstances of this particular case," but he did not set forth any specific grounds. On appeal the defendant now argues that the sentence is excessive because it is "a doubling of the recommended sentence" under the Sentencing Guidelines and the Multiple Offender *1076 Statute. However, because the defendant failed to include those "specific grounds" in his motion, he preserved only his right to a review of the bare claim of constitutional excessiveness. La.Code Crim.P. art. 881.1; State v. Mims, supra.
La. Const. art. I, § 20, prohibits the imposition of excessive punishment.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering.... A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.... The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits.... [Citations omitted.]
State v. Lobato, 603 So.2d 739, 751 (La.1992).
Regarding the imposition of a sentence mandated by the multiple offender statute, the Louisiana Supreme Court has stated:
If, ... when defendant is ultimately sentenced, the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime", he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. [Footnote omitted.]
State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993).
The penalty for intimidating a witness is a fine of not more than five thousand dollars or imprisonment, with or without hard labor, for not more than five years, or both. La.R.S. 14:129.1. Pursuant to La.R.S. 15:529.1(A)(1)(c)(i), as a fourth felony offender the defendant faced a sentencing range of imprisonment for twenty years to life:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life * * *.
Therefore, the defendant's forty-year sentence was on the lower end of the sentencing range. The defendant's record included convictions for forgery, simple burglary, simple robbery and simple kidnapping, thereby demonstrating his propensity for criminal activity. Furthermore, the defendant obviously was sentenced not just for his last conviction, but also for his many years of law-breaking. See State v. Gibson, 596 So.2d 832, 834 (La.App. 5th Cir.1992), writ denied, 598 So.2d 348 (La.1992). Considering the above, it does not appear that the sentence imposed is constitutionally excessive.[4] Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant also assigns as error any and all errors patent on the face of the record. For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment of sentence. See State v. Oliveaux, 312 So.2d 337, 339 (La.1975); State v. Weiland, 556 So.2d 175, 178 (La.App. 5th Cir.1990). We have found several patent errors, one of which requires us to vacate the sentence and remand for resentencing:
First, the State failed to specify in the multiple bill which of the counts was being considered for enhanced sentence. In *1077 addition, at the multiple offender proceeding the trial court adjudicated the defendant a multiple offender as charged, set aside the previous sentence, and imposed an enhanced sentence, without any specification regarding the counts. Only one count of a multi-count indictment/information can be used to enhance the penalty pursuant to La.R.S. 15:529.1 when the convictions were entered on the same day. State v. McIntyre, 496 So.2d 1204, 1207 (La.App. 5th Cir.1986). Although it appears that the trial court imposed the enhanced sentence based on one count and not on all counts, that assumption cannot be stated with certainty. See State v. McIntyre, supra. Furthermore, because two of the counts arose from a single criminal episode, the defendant could not have been sentenced as a multiple offender on all counts. State ex rel. Porter v. Butler, 573 So.2d 1106, 1108 (La.1991). Convictions on more than one count entered on the same date should be treated as one conviction for purposes of the habitual offender statute. Id. Therefore, the enhanced sentence imposed must be vacated and the case remanded to the trial court for resentencing.
The second patent error is that the trial judge failed to specify that the sentence imposed pursuant to the multiple offender bill of information was without benefit of probation or suspension of sentence, as required by La.R.S. 15:529.1(G). However, because the trial court did not suspend any portion of the sentence or impose any probationary period, there was substantial compliance with the statutory sentencing directive, making this error harmless. See State v. Washington, 563 So.2d 530, 533 (La.App. 4th Cir.1990).
The third patent error is that the trial court failed to observe the mandatory twenty-four hour delay between denying the motions for new trial and in arrest of judgment and imposing the original sentence, as required by La.Code Crim.P. art. 873. However, because the trial court subsequently set aside the original sentence at the multiple offender proceeding, this sentencing error also was harmless. La.Code Crim.P. art. 921.

DECREE
For the foregoing reasons, the defendant's convictions are affirmed, but the sentence imposed pursuant to La.R.S. 15:529.1 is vacated. The case is remanded for resentencing in compliance with the statute and with the views expressed herein.
CONVICTIONS AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] At trial, it was stipulated that both Stein and Barrilleaux were witnesses in another case wherein they alleged that Stein was a victim of an extortion by Brown.
[2] "Nancye" was the defendant's misspelling of Stein's first name. The defendant used the misspelled version throughout his letters; accordingly, we shall not note each separate instance.
[3] In both of the multiple offender bills of information, the State erroneously stated that the defendant was convicted of five counts of intimidating a witness.
[4] See State v. Gibson, supra, where this court upheld the sentencing of the defendant as a multiple offender to thirty-two years for a forgery conviction.