737 So.2d 228 (1999)
STATE of Louisiana
v.
Adam K. BAGEMEHL.
No. 98-KA-1134.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
*229 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Ron A. Austin, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Laurie A. White, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges H. CHARLES GAUDIN, SOL GOTHARD, and MARION F. EDWARDS.
GOTHARD, Judge.
This is an appeal from a criminal conviction and sentence. Defendant, Adam Bagemehl, was charged by bill of information filed on March 31, 1998 with unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3. On April 15, 1998, the defendant did not appear for his arraignment, but a plea of not guilty was entered on his behalf. The defendant filed a motion to suppress his confession and identification on April 21, 1998. On May 20, 1998, prior to trial, the State filed its notice of intent to use the defendant's statement at trial. That same day after a trial, a jury of six persons unanimously found the defendant guilty as charged. After the trial, the defendant made an oral motion for a post verdict judgment of acquittal, which the trial judge denied. The defendant subsequently filed a motion in arrest of judgment and alternatively, a motion for new trial. The trial judge denied these motions prior to sentencing on June 3, 1998, and after the defendant waived delays, the trial judge imposed a sentence of four years imprisonment at hard labor with credit for time served. The defendant made an oral motion to reconsider sentence, which was denied. Thereafter, the trial judge correctly informed the defendant of the post conviction relief prescriptive period. The defendant filed into the record a motion for appeal, which the trial judge granted the next day.[1]
On June 4, 1998, the state filed a multiple offender bill of information alleging the defendant to be a third felony offender. The minute entry for June 15, 1998 reflects that the multiple bill was read and the defendant denied the allegations therein. On August 5, 1998, the judge advised the defendant of his multiple offender rights, the defendant stipulated to the allegations in the multiple offender bill. The trial judge thereafter vacated the original sentence, and imposed an enhanced sentence of six years imprisonment at hard labor without benefit of probation or suspension of sentence. The trial judge gave the defendant credit for time served, and again correctly advised the defendant of the post conviction relief prescriptive period.

*230 FACTS
In January of 1998, eighteen-year-old Allison Plaisance ended her three-year relationship with the defendant. The relationship did not end amicably. On the morning of March 3, 1998, after Allison had left for school, her mother, Ramona Plaisance, noticed that the door to Allison's bedroom was closed. Mrs. Plaisance testified at trial that when she tried to open the door, she discovered that it was locked. Finding this to be unusual, Mrs. Plaisance attempted to pick the lock and successfully opened the door with an icepick. Mrs. Plaisance looked around the bedroom and noticed that the closet door was closed. When she opened one of the double doors to the closet, she noticed a pair of men's shoes and said, "get out." The defendant walked out of the closet. He told her that he had entered the house through her daughter's bedroom window and that Allison had let him in the house. The defendant then left the house. Mrs. Plaisance called her husband and he came home. The Plaisances looked in Allison's bedroom, and discovered that the window was open. They decided to wait until Allison came home from school before calling the police. After Allison told her parents that she did not give the defendant permission to be inside the house, the Plaisances called the police. Both Mrs. Plaisance and Allison testified at trial that they had not given the defendant permission to enter their home that morning.
At trial the jury heard testimony from Officer Randy Hudson of the Kenner Police Department, who testified that he went to the Plaisance residence at 145 Auburn Place and interviewed them in connection with this incident. He testified that he discovered a broken window pane adjacent to the lock on the window in the bedroom. Officer Hudson further testified that Mrs. Plaisance gave him the name and a description of the perpetrator. He also took a statement from Allison, who told him that she had not allowed the defendant in the house. Officer Hudson testified that the defendant was positively identified at the scene, and was subsequently arrested.
Allison Plaisance testified that she had seen the defendant out at clubs, but that she had very little contact with the defendant after their breakup in January. She testified that on the morning of March 3, 1998, she did not know the defendant was there, and had not invited him to come to her home. Allison testified that she slept with the door to her bedroom closed, but opened it after she left for school. Allison admitted that her parents had not approved of her relationship with the defendant, but testified that she had broken up with him because that was what she wanted. She further testified she was not trying to get back together with him. She testified that the defendant had never been in her room without her parents' knowledge and also that the defendant had never entered her room through the window. Both Mrs. Plaisance and Allison positively identified the defendant at trial.
The defense presented the testimony of Rebecca Patterson and Carla Orellana. Rebecca Patterson testified that she and Allison were good friends and that Allison had told her that the defendant had visited her at night. Carla Orellana testified that she and Allison had been good friends when they were younger, but that they were not very good friends anymore. She testified that she had stayed the night at Allison's house in the past, and that the defendant would also come over, and usually entered through Allison's bedroom window, which Allison left unlocked. Carla testified that the defendant was at the Plaisance residence at night a lot of times without Allison's parents' permission. She testified that on the day of trial, Allison had told her to "stick to her story" and say that Allison had not invited the defendant to the house that night. She further testified that Allison began dating her ex-boyfriend a month earlier and that this made her upset. Carla testified, however, that she was not "bitter" that Allison was dating her ex-boyfriend and had no hard feelings.
*231 Appellate counsel has filed a supplemental brief complying with the procedure approved by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and discussed in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). In State v. Bradford, 95-929, 95-930 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, this court noted the Louisiana Supreme Court's favorable response to the Fourth Circuit's policy regarding Anders briefs and adopted the same policy. Additionally, in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, the Supreme Court revisited the procedures outlined in State v. Benjamin, supra, and stated that "the brief filed by counsel must review not only the procedural history of the case and the evidence presented at trial but must also provide... a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." See also State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176.
This court has conducted a review of the record for errors patent. In that review, we noted that there is a discrepancy between the transcript of the sentencing hearing and the commitment form. At the sentencing on the multiple bill, the trial judge correctly imposed sentence without benefit of probation or suspension of sentence as provided by LSA-R.S. 15:529.1(G). However, the commitment form incorrectly reflects that the sentence was also imposed without benefit of parole. Where there is a discrepancy between the minute entry or commitment and the transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we affirm the conviction and sentence, and order that the commitment be amended to correctly state defendant's enhanced sentence.
AFFIRMED WITH ORDER.
NOTES
[1] While the motion for appeal is not dated, the minute entry reflects that the defendant filed the motion that day. Defendant's motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was adjudicated to be a multiple offender. However, that procedural defect was cured by the subsequent re-sentencing. State v. Balser, 96-443, p. 7 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354; State v. Page, 96-227, p. 4 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106 n. 2, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.