774 So.2d 267 (2000)
STATE of Louisiana
v.
Shone JORDAN, a/k/a Devine Jordan.
No. 00-KA-282.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
*269 Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, David P. Wolff, Debra Villio, Assistant District Attorneys, Louisiana, Counsel for State of Louisiana.
Carey J. Ellis, III, Louisiana Appellate Project, Rayville, Louisiana, Counsel for defendant-appellant.
Court composed of Judges CHARLES GRISBAUM, Jr., SOL GOTHARD and CLARENCE E. McMANUS.
McMANUS, Judge.
In this criminal matter, Defendant, Shone Jordan, appeals his convictions of three counts of manslaughter. We affirm Defendant's convictions but remand the matter for re-sentencing and correction of patent errors.

STATEMENT OF THE CASE
On January 28th, 1998, Shone Jordan,[1] Defendant, was charged by a three-count bill of information.[2] Count 1 charged him with manslaughter alleging that he killed Dana Jones on November 30th, 1997, in violation of LSA-R.S. 14:31; Count 2 charged him with manslaughter in that he killed a juvenile victim, six weeks of age, on November 30th, 1997, in violation of LSA-R.S. 14:31; Count 3 alleged he committed manslaughter by killing a juvenile victim aged ten years on November 30th, 1997, in violation of LSA-R.S. 14:31; and, Count 4 alleged that he committed attempted first-degree murder of JPSO Agent Robert Gerdes on November 30th, 1997, in violation of LSA-R.S. 14:27 and 14:30.
Defendant entered a plea of not guilty on February 9th, 1998. He filed various pre-trial motions, which included a motion for a bill of particulars requesting which sections or sub-parts of the statutes the State relied on as the basis for the manslaughter prosecution. On September 17th, 1998, the State responded that the prosecution was based on LSA-R.S. 14:31(2)(a) with an underlying felony of 14:108.1(d) and/or an underlying intentional misdemeanor of 14:108 and/or 14:98 A(1)(c). The prosecution was also alternatively based on LSA-R.S. 14:31(2)(b). On December 15th, 1998, the State filed a second answer to the motion for a bill of particulars and restated it was relying on LSA-R.S. 14:31(2)(a). The trial judge heard and denied Defendant's motion to quash and/or limit the prosecution on September 21st, 1998.
After several continuances, a jury trial[3] was held December 15th, 16th, 17th, and 18th, 1998. The twelve person jury rendered a verdict finding Defendant guilty on all counts.[4] The judge polled the jury and determined that the verdicts were legal.[5] The State then noted its intent to *270 file a multiple bill against Defendant. No post-trial motions were filed. Defendant was sentenced on January 11th, 1999, after defense counsel stated Defendant was ready for sentencing. On counts 1, 2 and 3, Defendant was sentenced to 30 years at hard labor on each count, to run concurrently. He was sentenced on count 4 to 25 years at hard labor, to run consecutively with the sentences in counts 1, 2 and 3. The sentence on count 4 was imposed without benefit of parole, probation, or suspension of sentence. He was given credit for time served. Defense counsel objected to the sentences as excessive, and stated his intent to appeal. On that date, the State filed a multiple offender bill of information, alleging Defendant was a fourth felony offender.[6] It recited that the State sought to enhance defendant's conviction of LSA-R.S. 14:31, manslaughter. On January 11th, 1999, after the convictions and sentencing, defendant filed a written motion for appeal, which was granted the same day.
Defendant filed a motion for discovery, bill of particulars, and inspection on January 28th, 1999, regarding the multiple offender bill of information. The State provided discovery. Defendant filed a response to the multiple bill alleging the following: the Boykin hearings were defective; the arrest documentation was inadmissible hearsay; and the prior offenses were insufficient to sustain the prosecution to determine multiple offender status. On February 4th, 1999, Defendant denied the allegations of the multiple bill and did not testify at the hearing. The multiple offender hearing was held on May 27th, 1999, July 22nd, 1999, August 9th, 1999, and October 18th, 1999. On February 4th, 1999, Defendant filed a motion to reconsider sentences, which was denied by the trial judge at the May 27th, 1999, hearing.
After considering expert testimony establishing that Defendant's fingerprints matched those found in State's exhibits Numbers 2 through 4, correlating to the three alleged prior felonies, and after reviewing the Boykin colloquies, the court adjudicated Defendant to be a fourth felony offender. Defendant waived legal delays. The trial judge sentenced Defendant to imprisonment for the remainder of his natural life, without benefit of parole, probation or suspension of sentence, and with credit for time served. Defendant stated that he would adopt his previously filed motion for appeal as it related to the multiple bill sentencing.[7]

FACTS
On November 30th, 1997, Agent Robert Gerdes of the Jefferson Parish Sheriffs Office was working a paid detail for Dillard's Department Store in Lakeside Mall. As part of the detail, Gerdes was in full departmental uniform dress. At approximately 5:30 p.m. on November 3th, Gerdes was standing near the exit of the store into the mall when an alarm went off indicating that someone had left the store with an item on which the security tag was still attached.
Gerdes then walked to the entrance to Dillard's from the mall to see who was standing in the area when the alarm sounded. Gerdes noticed Defendant in the *271 middle of the mall carrying a Saks Fifth Avenue bag. Gerdes saw Defendant cradling the bag like a football and that the bag was torn and clothes were spilling out of the bag. At this point, a Dillard's employee approached Gerdes and told him that Defendant was the person who set off the alarm.
Gerdes yelled at Defendant that he was under arrest, and Defendant began to run toward a fire exit. Gerdes focused on Defendant because he was carrying the bag. Defendant went through the fire exit which led into the Causeway parking lot of Lakeside Shopping Center.
Defendant ran to a white Lincoln Town Car. Gerdes continued to yell at Defendant to stop. Defendant got into the passenger side of the car and yelled at another black male who was near the car to get in. When Gerdes arrived at the car, he threw the second man out of the way and focused on Defendant. Defendant then began to reach under the seat and Gerdes drew his weapon and ordered Defendant to show his hands.
Defendant would not comply with Gerdes's orders and slid into the driver's seat of the Lincoln. As Gerdes was ordering Defendant out of the car, Sergeant Harrison of the Jefferson Parish Sheriffs Office arrived. Harrison was also working a paid detail in Dillard's that day. Once Harrison arrived in the area, Gerdes moved closer to the Lincoln to physically arrest Defendant. Gerdes moved between the Lincoln and the van parked next to it.
At this point, Defendant put the Lincoln into drive and attempted to crush Gerdes between the Lincoln and the van parked next to it. To avoid being crushed, Gerdes dove into the open driver's window of the Lincoln. Gerdes was hanging half in and half out of the Lincoln when Defendant began to struggle with Gerdes over the officer's weapon. Defendant attempted to point Gerdes's gun back at Gerdes. Gerdes was able to point the gun away from him and discharge a round. When Gerdes fired the gun, Defendant let go of Gerdes's hand and Gerdes fell out of the car.
Defendant continued to drive away hitting a Suburban, knocking over a tree and a street sign, and blowing out the right front tire on the Lincoln in the process. Defendant continued to flee. He drove out of the parking lot and got on Causeway Boulevard heading south.
Defendant fled on Causeway Boulevard toward Jefferson Highway. Andrew Ramsey was driving on Causeway that evening when he saw the Lincoln coming up behind him and pass him. Ramsey noticed that the Lincoln's right front tire had been blown out and that there were sparks coming from that area. Ramsey called 9-1-1 and began to chase the Lincoln. Ramsey watched as Defendant continued to accelerate the Lincoln. He testified that Defendant was driving in excess of 85 miles per hour and was "pushing 100." Ramsey fell back as marked Jefferson Parish police units began to give chase. The record is clear that as many as three marked police units chased Defendant, each with sirens and lights activated. In addition, two other witnesses testified that Defendant's car was exceeding seventy miles per hour.
The marked units chased Defendant as he exited Causeway onto Jefferson Highway. Defendant did not stop at the intersection, but traveled across three lanes of traffic. Defendant hit the median, and the Lincoln went airborne. The Lincoln crashed into a car traveling on Jefferson Highway toward Orleans Parish.
The car that Defendant crashed into was driven by Dana Jones and carried passengers Patrick Hamilton, Ashley Williams and Jeremy Jones. As a result of the collision, Dana Jones, Patrick Hamilton, and Ashley Williams were killed.
After the collision, Defendant was apprehended and taken to Charity Hospital where blood and urine were drawn for chemical screening.
*272 The State presented testimony that Defendant's blood and urine were screened and that his urine tested positive for cocaine and heroin. The State further presented testimony that the drugs had been taken hours before the accident. Additionally, the State presented expert testimony that the combination of drugs in Defendant's system would tend to make a person aggressive and reckless.
The Defense's sole witness was Adam Laurence. He testified that he drove Defendant to the mall on November 30th, 1997. Defendant promised Laurence $100.00 if Laurence drove him to the mall. Laurence testified that the police officer chasing Defendant had his gun drawn during the entire chase. Laurence also denied that Defendant and the officer struggled over the gun.

ASSIGNMENT OF ERROR NUMBER ONE
As his only assignment of error, Defendant argues that the trial court erred by failing to quash or limit the prosecution of manslaughter as requested by the Defendant.
Defendant argues that the trial court erred in denying his motion to quash and limit the prosecution because the intentional misdemeanors relied upon by the prosecution to support the manslaughter charges do not directly affect the person, as required by LSA-R.S. 14:31 A(2)(a), and further, that LSA-R.S. 14:31 A(2)(b) is inapplicable because Defendant was resisting arrest in a manner that was inherently dangerous. The State responds that Defendant's failure to file a written motion precludes review of this issue here, and further argues the trial court did not err in denying Defendant's motion to quash because the misdemeanors relied upon do directly affect the person and that LSA-R.S. 14:31 A(2)(b) applies so long as either the manner or the means that a perpetrator uses to escape are not inherently dangerous.
We preface this discussion with a brief notation that Defendant does not challenge the sufficiency of evidence produced to prove any particular one of the enumerated underlying charges. His assignment of error challenges only the sufficiency of the bill of information. Therefore, questions of whether the State could prove, or, did prove, any of these charges have no part in any determination of whether or not these charges form a proper basis for prosecution.
Defendant was charged with three counts of manslaughter arising out of his flight from police and the car accident. LSA-R.S. 14:31 provides in pertinent part that:
A. Manslaughter is:
. . . . . . . . . .
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
Defendant filed a motion for bill of particulars and discovery. One of the questions in Defendant's motion was:
Upon which statute is this prosecution based? If based upon a statute or statutes consisting of sections, paragraphs or other sub parts, please specify which section or subpart forms the basis for this prosecution.
In the supplemental and amended answers to motions for bill of particulars and discovery, the State responded:
This prosecution is based upon LRS 14:31(2)(a) with an underlying felony of 14:108.1(d) and/or an underlying misdemeanor *273 of 14:108 and/or 14:98A(1)(c). The prosecution is also, alternatively based upon LRS 14:31(2)(b).
LSA-C.Cr.P. art. 536 requires that a motion to quash be in writing, and this Court has found that failure to file a written motion is a waiver of the assignment of error. State v. Arabie, 507 So.2d 859 (La. App. 5 Cir.1987). In the present case, no written motion appears in the record. However, we are satisfied that the motion had been filed by the Defendant. Comments made by all parties at the hearing indicate without question that the motion had been filed and served on the State. Additionally, it is noted that Defendant applied for writs to this Court in a writ application designated 98-K-1035, arguing that the trial court erred in denying his motion to quash. This Court denied Defendant's writ application on September 3, 1998. Attached to the writ application is a copy of Defendant's clocked-in motion to quash. This Court has held that a court may take judicial notice of its own proceedings. State v. Hotoph, 99-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036, 1054. We are satisfied that Defendant did actually file a motion below, preserving this issue for purposes of appeal.
The State listed LSA-R.S. 14:108.1, aggravated flight from an officer as a felony not enumerated in Article 30 or 30.1 as one basis for the manslaughter charge. The State also relied on two misdemeanors, operating a vehicle while intoxicated and resisting arrest, as misdemeanors directly affecting the person to support the manslaughter charge. Finally, the State relied on LSA-R.S. 14:31 A(2)(b) which deals with resisting arrest to support the manslaughter charge.
At the hearing on the motion to quash, Defendant attacked each of the four bases put forth by the State to support the charge of manslaughter. Here, however, Defendant focuses on the two misdemeanors and the section of the manslaughter statute dealing with resisting arrest; he does not attack the use of the felony of aggravated flight to support the manslaughter charge.

LSA-R.S. 14:98 A(1)(c)
LSA-R.S.14:31 provides in part that manslaughter is a homicide committed without any intent to cause death or great bodily harm when the offender is engaged in the perpetration of any intentional misdemeanor directly affecting the person. The State listed LSA-R.S. 14:98 A(1)(c), operating a vehicle while intoxicated, as an intentional misdemeanor directly affecting the person. Defendant responds that driving under the influence is not a misdemeanor directly affecting the person. However, we need not address whether this charge is an intentional misdemeanor directly affecting the person.
If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more ... acts, means, intents, or results may be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction. LSA-C.Cr.P. art. 480 (emphasis supplied). Because there is no question that the State's response to Defendant's bill of particulars included citation to several additional conjunctive underlying offenses in support of the manslaughter charges, we need not discuss whether this charge provides a sufficient basis for prosecution. As noted above, Defendant does not challenge the sufficiency of evidence offered to prove any other of the conjunctive underlying offenses. Therefore, we need not decide whether LSA-R.S. 14:98 A(1)(c) will support a charge under LSA-R.S. 14:31(2)(a).

LSA-R.S. 14:108
The State also stated in supplemental answers to Defendant's motion for bill of particulars that the prosecution was based in part on Defendant's commission *274 of the misdemeanor of resisting an officer in violation of LSA-R.S. 14:108. Defendant argues that this misdemeanor cannot support the manslaughter charge because resisting an officer is not a misdemeanor directly affecting the person.
The crime of resisting an officer is defined in LSA-R.S. 14:108 as:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
(2) The word "officer" as used herein means any peace officer, as defined in R.S. 40:2402, and includes deputy sheriffs, municipal police officers, probation and parole officers, city marshals and deputies, and wildlife enforcement agents.
During the motion to quash, the State relied on the case of State v. Jenkins, 454 So.2d 282 (La.App. 4 Cir.1984), writ granted in part, 458 So.2d 109 (La.1984),[8] for the proposition that resisting an officer under LSA-R.S. 14:108 is a misdemeanor directly affecting the person as defined in the manslaughter statute. In Jenkins, the defendant ran a stop sign and two policemen in a marked car attempted to pull him over. The defendant refused to stop, and as the officers pursued the defendant, the defendant stuck another car and killed a passenger in that car. The defendant was charged with manslaughter.
We acknowledge, however, that a careful reading ofJenkinsreveals that the court did not rely on LSA-R.S. 14:108the misdemeanor of resisting arrestto support the manslaughter charge. In Jenkins, the charge was based on LSA-R.S. 14:31(2)(b), resisting lawful arrest by means, or in a manner, not inherently dangerous. The court relied on LSA-R.S. 14:108 to find that the defendant was subject to lawful arrest at the time of the accident so as to trigger the application of LSA-R.S. 14:31(2)(b).
On the other hand, we cannot think of a situation which illustrates more dramatically why resisting arrest should constitute an offense against the person than the facts of this case. We would find it hard to imagine a situation in which a "person" is more directly affected than was Agent Gerdes during his struggle with Defendant. Is there any question that battery of a police officer and murder are offenses against the person? And the facts of this case demonstrate how quicklyhow, in an instantresisting an officer can escalate into one of the two more serious offenses. It does not take much to imagine Agent Gerdes losing his life during this incident. If this offense is not an offense against a person, once an uninterrupted act commences, as the action unfolds, where *275 should we draw the line which implicates this other class of offenses? We cannot fathom any reason for drawing such a line. Nor can we see why the legislature would want us to do so.
We must acknowledge that resisting arrest is not listed among the crimes classified as "offenses against the person"; it is listed instead as one of the "offenses affecting the public generally," and more specifically, as "crimes affecting law enforcement." However, we are also mindful that the titles of acts serve only as interpretive aids to the statutes enacted thereby. State v. Madere, 352 So.2d 666 (La.1977). Applying this same principle to the headings which simply organize the statutes, we think it reasonable to say that such headings also have authority only as an aid in interpreting the legislature's intent. And we can't believe that the legislature, by simply inserting this crime where it fits conveniently as part of a group of similar offenses, meant to imply that law enforcement officers are not "persons."
Avoiding injuryavoiding something worseis an everyday struggle for police officers. Each officer's life is on the line, his "person" in the line of fire, every working day. And while police officers represent an agency"law enforcement"they are the flesh and blood representatives of the institution. Resisting an officer is a type of crime that affects a person as opposed to society in general, or even the somewhat nebulous institution identified as law enforcement. An offender who resists arrest is resisting an individual. This resistance occurring in face to face encounters directly affects a person, directly affects "the" person.
This crime plainly suffices as an underlying offense to support a manslaughter charge; this alleged insufficiency clearly did not provide grounds for quashing the bill of information or prosecution under the bill.

LSA-R.S. 14:31(2)(a)
The State noted that the prosecution in this case was based in part on LSA-R.S. 14:31(2)(a) which provides that:
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person ...
The State relied on the felony of aggregated flight from an officer in violation of LSA-R.S. 14:108.1. Aggravated flight from an officer is defined in LSA-R.S. 14:108.1 as:
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic.
On appeal, Defendant appears to not question that LSA-R.S. 14:31(2)(a) serves as a valid basis for the manslaughter charge in the present case. Indeed, we can't imagine any convincing argument that this offense does not support a manslaughter charge; we see no grounds here for quashing the bill of information.

*276 LSA-R.S. 14:31(2)(b)

Defendant argues that LSA-R.S. 14:31(2)(b) cannot apply because under the facts of this case his resisting arrest was inherently dangerous. The State responds that for LSA-R.S. 14:31(2)(b) to apply either the manner or the means of resisting must not be inherently dangerous.
LSA-R.S. 14:31(2)(b) defines manslaughter as:
(2) A homicide committed, without any intent to cause death or great bodily harm.
. . . . . . . . . .
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
Defendant argues that under the facts of this case this provision cannot apply. The State argues that in the present case Defendant resisted arrest by fleeing in a car, and that driving a car is not an inherently dangerous means of resisting. The State further argues that Defendant's speeding made his manner of resisting inherently dangerous but not his means.
We are unable to consider this claim which is not properly before us. A motion to quash is not the correct mechanism to raise this argument. In State v. Perez, 464 So.2d 737 (La.1985), the Supreme Court discussed the nature of a motion to quash and stated:
The motion to quash is essentially a mechanism by which to raise pre-trial pleas of defense, i.e., those matters which do not go to the merits of the charge. La.C.Cr.P. art. 531-534. It is treated much like an exception of no cause of action in a civil suit. State v. Gerstenberger, 260 La. 145, 255 So.2d 720 (1971).
In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. State v. Gerstenberger, 260 La. 145, 150, 255 So.2d 720 (1971); State v. Ponthieux, 254 La. 482, 224 So.2d 462 (1969). The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. State v. Rembert, 312 So.2d 282 (La.1975); State v. Patterson, 301 So.2d 604 (La.1974); State v. Snyder, 277 So.2d 660 (La.1973).
State v. Perez, 464 So.2d at 739-740.
In State v. Allo, 510 So.2d 14 (La.App. 5 Cir.1987), defense counsel claimed that the bill of information charging defendant with obscenity should have been quashed because the alleged offense took place on private property, not open to public view, as was required by the statute, LSA-R.S. 14:106. This Court found that the trial judge properly denied the motion to quash stating as follows:
In the present case, defendant is not raising any issue as to the sufficiency of the indictment under the specific wording of the statute, or it being defective in failing to advise the defendant of the specific crime with which he was charged, or the indictment failing to charge a valid offense. The defendant is essentially arguing that he has a valid defense to the indictment as written in that he contends the alleged offense took place on private property not open to the public view. If this were true, then one of the necessary elements of this portion of the obscenity statute would be lacking. However, the determination of this question is a factual matter which goes to the merits of the case and is a question for the jury to decide. As the Motion to Quash does not appear to be the proper procedural vehicle to raise this issue, the trial judge properly denied it. *277 State v. Allo, 510 So.2d at 19 (emphasis in original).
In the present case, Defendant relies on the facts of the case to support his defense that the State could not prove manslaughter under LSA-R.S. 14:31(2)(b) because of the manner in which he resisted. The determination of this question is a factual matter that goes to the merits of the charge and is a question for the jury; and therefore, a motion to quash is not the proper procedural vehicle to raise the issue. State v. Allo, 510 So.2d at 19. And it must be remembered that sufficiency of evidence is not raised here. The trial court properly denied Defendant's motion to quash the manslaughter charge based on LSA-R.S. 14:31(2)(b).
In conclusion, aggravated flight from an officer under LSA-R.S. 14:108.1 and resisting an officer under LSA-R.S. 14:108 are valid bases to support a manslaughter charge under LSA-R.S. 14:31(2)(a). Additionally, a motion to quash was the improper procedural vehicle to attack the manslaughter charge under LSA-R.S. 14:31(2)(b).
The trial judge was correct to have denied Defendant's motion to quash the bill of information or prosecution in this case.

PATENT ERROR DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following errors.
After the trial judge sentenced Defendant to imprisonment for the remainder of his natural life, without benefit of parole, probation or suspension of sentence, the judge stated he was vacating the original sentence. However, the judge failed to specify which sentence had been vacated, and, in addition, the original sentence was vacated after the enhanced sentence was imposed.
LSA-R.S. 15:529.1 D(3) requires a trial court to vacate an original sentence, and we have held that where the original sentence on the underlying offense has not been vacated before the habitual offender sentence is imposed, a defendant's original sentence remains in effect and the subsequent sentence imposed for the multiple offender conviction is null and void. State v. Carter, 98-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 354; State v. Jackson, 95-423 (La.App. 5 Cir. 11/15/95), 665 So.2d 467, 469; State v. Henderson, 94-286 (La.App. 5 Cir. 12/14/94), 648 So.2d 974, 979. However, the Louisiana Supreme Court has also held that "[a]ny sentence imposed for the substantive offense prior to the filing of an habitual offender charge is to be vacated coincidentally with imposition of the enhanced penalty." State v. White, 354 So.2d 1360 (La. 1978) (emphasis supplied; citation omitted). Since the trial judge vacated the original sentence "coincidentally with imposition of the enhanced penalty," therefore, the technical failure to vacate the original sentence before imposing the enhanced one is of no consequence, requiring no remedial step. Accord, State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 688, in which this court addressed an identical situation and held, "Because this sentence was vacated coincidentally with the imposition of the enhanced sentence, we find no necessity to vacate the enhanced sentence."
In the multiple offender bill of information, the State sought enhanced sentencing of the Defendant for a single conviction of manslaughter. However, the State failed to specify which one of the counts was being considered for an enhanced sentence, and the trial court vacated the previous sentence and imposed an enhanced sentence without any specification regarding the three counts or convictions for manslaughter. Due to the lack of specification regarding the counts, therefore, Defendant's multiple offender sentence must be vacated and the matter remanded for re-sentencing so that the trial judge can specify which of Defendant's *278 three sentences for manslaughter is to be enhanced. See State v. Stack, 97-1176 (La.App. 5 Cir. 4/15/98), 710 So.2d 841, 845; State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1077; State v. McIntyre, 496 So.2d 1204, 1207 (La.App. 5 Cir.1986).
Finally, at the original sentencing, the trial judge informed Defendant that he has "three years to file post conviction relief." After sentencing on the multiple bill, however, the trial judge did not inform Defendant of the prescriptive period in which to file such an application. Because the notification is unclear about when the prescriptive period commences, it is therefore infirm. In addition, we note that when the trial judge does again provide Defendant with such notification, he shall inform Defendant of the amended prescriptive period of two years, applicable in this case. See State v. Boles, 99-662 (La. App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.
CONVICTION AFFIRMED; MATER REMANDED FOR RE-SENTENCING AND COMPLIANCE WITH RULES REGARDING POST CONVICTION RELIEF.
NOTES
[1] Defendant is also referred to as "Devine Jordan," "Devan Jordan," "Desmond Poe," and "Project." The verdict was rendered in the name of "Shone Jordan a/k/a Devine Jordan."
[2] Defendant was also charged with shoplifting, a charge which was severed from those in the instant case and which does not form part of the current bill of information.
[3] Defense counsel waived the presence of Defendant at trial during a discussion outside the presence of the jury regarding evidentiary matters. The record shows, however, that Defendant was present in court at the commencement of the State's case.
[4] When the jury informed the judge that it had reached a verdict, the trial judge informed the jury it had not completely filled in the verdict form, and instructed the members to amend the verdict form correctly. The jury then retired to complete the verdict form. After completing the form, the jury returned, and the verdict was read by the trial judge.
[5] The jury poll is included in the exhibits. It contains the two polls taken by the trial judge. The judge polled the jury as to the verdicts of manslaughter; he next polled the jury as to the verdict on count four, attempted second degree murder. These two polls indicate that the vote was 12 to 0 and 11 to 1, both of which are legal verdicts. See LSA-C.Cr.P. art. 782 A. Additionally, at sentencing, the judge noted that the manslaughter verdicts were unanimous and the attempted first degree murder verdict was 11 to 1.
[6] The bill refers to "Shone Jordan a/k/a Devine Jordan."
[7] As stated in State v. Bagemehl, 98-1134 (La. App. 5 Cir. 5/19/99), 737 So.2d 228, 229, n. 1 (citations omitted): Defendant's motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was adjudicated to be a multiple offender. However, that procedural defect was cured by the subsequent sentencing.
[8] The Louisiana Supreme Court set aside the defendant's sentence and remanded the case to the district court for compliance with LSA-C.Cr.P. art. 894.1. State v. Jenkins, 458 So.2d at 109.